UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
EUGENE I. KELLY,                :
                                :
        Petitioner,             :    Civ. No. 15-3932 (NLH)
                                :
    v.                          :    OPINION
                                :
STATE OF NEW JERSEY, et al.     :
                                :
        Respondents.            :
_____:

APPEARANCES:
Eugene I. Kelly
1329 Broad Street
Pleasantville, NJ 08232
    Petitioner Pro se

Mario C. Formica, Esq.
Atlantic County Prosecutor's Office'
4997 Unami Boulevard
Mays Landing, NJ 08201
    Counsel for Respondents

HILLMAN, District Judge

    Petitioner Eugene I. Kelly ("Petitioner"), a prisoner

formerly incarcerated at the Bayside State Prison and presently

on parole[1] has filed a Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 (the "Petition").  ECF No. 1.  By

order of Court, Respondents filed an Answer to the Petition (the

"Answer").  ECF No. 14.  Petitioner then filed a reply to the

Answer (the "Reply").  ECF No. 18.  The Petition is ripe for

_____

[1] A prisoner released on parole satisfies the "in custody"
requirement of 28 U.S.C. § 2254(a).  See Jones v. Cunningham,
371 U.S. 236, 242 (1963).

disposition.  For the reasons stated below, the Petition will be denied.

**I. BACKGROUND**

On March 26, 2007, Officer Mark Gorman was conducting routine patrol in a marked police vehicle in Pleasantville, New Jersey.  ECF No. 14-10 at 63-64, 68, 71 (trial transcript).  As Officer Gorman approached a red light on Washington Avenue around 2:20 a.m., he saw Petitioner talking on a cellular telephone while walking and swaying back and forth on the sidewalk.  Id. at 64, 69, 70.  Petitioner looked at Officer Gorman, pointed to his cellular telephone, and said in a slurred voice, "I'm on my phone.  Just on the phone."  Id. at 70-71.  Officer Gorman did not observe anyone else on the sidewalk or street at that time.  Id. at 144, 169.

Officer Gorman was concerned for Petitioner's safety because he believed that Petitioner was intoxicated.  Id. at 71-72.  He turned his patrol car around to check on Petitioner's well-being.  Id. at 72.  As Officer Gorman went to exit his vehicle, Petitioner turned around and began to walk in the opposite direction.  Id. at 73.  Officer Gorman said to Petitioner, "Yo, where are you going?  Come here . . . I want to talk to you."  Id. at 73.  Petitioner stated, "Why are you harassing me?  . . .  I'm not doing anything wrong.  I'm just

2

waiting for a ride." Id. Officer Gorman asked Petitioner where he was going, and Petitioner said, "Over there" and, after some back and forth, stated that he was going to get cigarettes. Id. at 74-75. Officer Gorman did not believe that any store within about three miles was selling cigarettes at the time of the night.[2] Id. at 76. At this point, Officers Mark Porter and Robert D'Arcangelo arrived. Id.

Officer Gorman asked Petitioner for identification, to which Petitioner responded, "Why are you doing this?" Id. at 77. After asking the question again three times, Petitioner said, "yes," and motioned towards his pocket. Id. at 78, 106. Officer Gorman ordered Petitioner to turn around, to put his hands on top of his head, and to interlock his fingers. Id. at 78-79. Petitioner did not comply, and Officer Gorman asked him if "he had anything on him that would hurt me," to which Petitioner responded, "No." Id. at 80.

As Officer Gorman positioned Petitioner for a pat down for weapons, Officer D'Arcangelo saw a gun in Petitioner's waistband and screamed, "gun." Id. at 80-81, 137. He then grabbed the

---

[2] Darlene Mulligan, an investigator and witness for Petitioner, testified at trial that she investigated the location of stores that sold cigarettes in the vicinity, and that one store located 1.5 miles away, would have been open at 2:30 a.m. Id. at 232-34, 238.

gun, a loaded .22 caliber handgun, while the other officers

secured Petitioner, who stated, "I need that gun for my

protection" or "I need it for my protection."  Id. at 82, 142,

165.  Petitioner was then arrested.  None of the officers

involved in the incident saw any other person or vehicle during

their interaction with Petitioner.[3]  Id. at 69-71, 144, 168.

    After Petitioner's arrest,

>       a grand jury sitting in Atlantic County returned an
>       indictment charging defendant Eugene I. Kelly with
>       third-degree unlawful possession of a handgun,
>       N.J.S.A. 2C:39-5(b); fourth-degree unlawful possession
>       of hollow-point bullets, N.S.J.A 2C:39-3(f); and
>       second-degree possession of a weapon by a convicted
>       person, N.J.S.A. 2C:39-7.
>
>       After a motion to suppress was denied, Kelly entered
>       into a plea agreement whereby he pled guilty to one
>       count of third-degree unlawful possession of a handgun
>       in satisfaction of all charges.  In return, the State
>       agreed to recommend a sentence not to exceed five
>       years and to dismiss counts two and three of the
>       indictment.  Kelly also agreed to waive his right to
>       appeal pursuant to Rule 3:9-3(d).
>
>       Prior to his sentencing, Kelly moved pro se to
>       withdraw his guilty plea.  Judge Bernard E. DeLury,
>       Jr., denied Kelly's motion and informed him that, as
>       part of the plea bargain, he waived his right to
>       appeal, and if he decided to appeal, "the State can
>       withdraw from this guilty plea pursuant to the rule
>       and then reinstate the dismissed charges against you
>       and proceed along the prosecution's path to trial."
>       Kelly indicated that he understood.  Judge DeLury then

_____

[3] A witness for Petitioner, however, testified that he witnessed
Petitioner's encounter with the police officers on March 26,
2007, and that the officers approached Petitioner without
justification and then "wrestled" him to the ground.  Id. at
186, 188.

imposed the agreed-upon five-year term in accordance
with the plea agreement.

Kelly then filed a pro se notice of appeal, and the
State moved to annul the plea agreement.  Judge DeLury
granted the State's motion, vacated Kelly's
conviction, and restored all charges.  Kelly then
withdrew his appeal and moved for reconsideration of
his motion to suppress, which was denied.

New Jersey v. Kelly, A-0708-13T1 (N.J. App. Div. April 15, 2015)

(per curiam).  During the initial proceedings, the suppression

hearing, and plea negotiations, Petitioner was represented by

Eric Shenkus of the Public Defender's Office.  Mr. Shenkus

withdrew as counsel and was replaced by Jill R. Cohen, Esq., who

represented Petitioner from pre-trial motions through trial.

The matter proceeded to trial on May 19, 2009, and

Petitioner was convicted of second-degree possession of a weapon

by a convicted person in violation of N.J. Stat. Ann. 2C:39-7b.[4]

---

[4] The State elected to try Petitioner on a single charge of
second-degree possession of a weapon by a convicted person and
dismissed the other two counts.  That statute provides, in
pertinent part:

A person having been convicted in this State or elsewhere of
the crime of aggravated assault, arson, burglary, escape,
extortion, homicide, kidnapping, robbery, aggravated sexual
assault, sexual assault, bias intimidation in violation of
N.J.S.2C:16-1, endangering the welfare of a child pursuant to
N.J.S.2C:24-4, stalking pursuant to P.L.1992, c.209 (C.2C:12-
10) or a crime involving domestic violence as defined in
section 3 of P.L.1991, c.261 (C.2C:25-19), whether or not
armed with or having in his possession a weapon enumerated in
subsection r. of N.J.S.2C:39-1, or a person having been
convicted of a crime pursuant to the provisions of
N.J.S.2C:35-3 through N.J.S.2C:35-6, inclusive; section 1 of

ECF No. 14-10 at 300. After trial, Judge DeLury granted the State's motion to impose an extended term and sentenced Kelly to a sixteen-year term with an eight-year minimum term. New Jersey v. Kelly, A-0708-13T1 (N.J. App. Div. April 15, 2015). Kelly appealed, and the Appellate Division affirmed. State v. Kelly, No. A-1096-09 (App. Div. Jan. 31, 2012). The Supreme Court of New Jersey denied certification. 210 N.J. 480 (2012).

Kelly then filed pro se a petition for post-conviction relief (PCR). See ECF No. 14-19. Petitioner argued, inter alia, that his trial counsel was ineffective for failing to ask Officer Gorman certain questions on cross-examination at trial about Petitioner's alleged intoxication. ECF No. 14-21 at 6. After the appointment of counsel and the submission of briefs, Judge DeLury heard oral argument.

On April 3, 2013, Judge DeLury filed a sixteen-page decision denying Kelly's petition without a hearing. See ECF No. 14-21. He determined that Kelly's arguments were procedurally barred under N.J. Rule 3:22-5, because they were "identical to those raised on appeal." The judge further found

---

P.L.1987, c.101 (C.2C:35-7); N.J.S.2C:35-11; N.J.S.2C:39-3; N.J.S.2C:39-4; or N.J.S.2C:39-9 who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree and upon conviction thereof, the person shall be sentenced to a term of imprisonment by the court.

that, even if Rule 3:22-5 were not applied, Kelly had not established a prima facie case for ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Relying on <u>Strickland</u>, Judge DeLury determined that "it cannot be said that Petitioner's counsel did not act reasonably when [s]he chose to question Officer Gorman in the manner in which [s]he did." ECF No. 14-21 at 14.

Petitioner appealed the denial of his PCR petition to the Appellate Division, which affirmed on the basis of Judge DeLury's decision. <u>State v. Kelly</u>, 2015 WL 1649249 (N.J. App. Div. April 15, 2015).

On June 11, 2015, Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254. In it, Petitioner raises an ineffective assistance of counsel claim, a Fourth Amendment claim, and a due process claim. <u>See</u> ECF No. 1. The Court screened the Petition and allowed the ineffective assistance of counsel and due process claims to proceed.[5] <u>See</u> ECF Nos. 8 (opinion) and 9 (order). Petitioner argues that his trial counsel was ineffective for the following reasons:[6]

---

[5] The Court found that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court and thus such a claim could not be reviewed pursuant to § 2254. <u>See</u> ECF No. 8.

[6] Petitioner has never raised in state court and does not now

7

- Trial counsel failed to show the jury the jacket he
  was wearing at the time of the incident "so they could
  see it was impossible to see a gun in plain view sight
  so big and long as it was."

- Trial counsel failed to call a taxi cab service owner
  as a witness to testify that Petitioner was waiting
  for a taxi cab.

- Trial counsel failed to cross-examine Officer Gorman
  as to whether he smelled alcohol on Petitioner; and

- Trial counsel failed to ask why the police dispatch
  report did to mention an intoxicated person.

ECF No. 1 at 6. Petitioner also asserts a violation of his

right to due process in that Officer Gorman's testimony at the

grand jury differed from his testimony given at the suppression

motion hearing regarding the pat down of Petitioner, i.e. that

Officer Gorman committed perjury. ECF No. 1 at 8.

## II. Standard of Review

A petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 is the proper mechanism for a prisoner to challenge the

fact or duration of one's confinement because the petitioner is

in custody in violation of the Constitution or the laws of the

United States. See 28 U.S.C. § 2254(a); Pinholster, 563 U.S. at

---

raise in the Petition a claim of ineffective assistance of
counsel against the attorney who represented him at his
suppression hearing, Mr. Shenkus. Because the Petition raises
claims only against his trial attorney, Ms. Cohen, from conduct
arising at trial, the Court does not construe the Petition to
raise a claim for ineffectiveness at the suppression hearing
against Mr. Shenkus.

181; <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 498-99 (1973). A habeas petitioner bears the burden of establishing his entitlement to relief for each claim presented in the petition. See <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).

The standard used in reviewing habeas claims under § 2254 depends on whether those claims have been adjudicated on the merits by the state court. If they have not been adjudicated on the merits, the Court reviews de novo both legal questions and mixed factual and legal questions. See <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). If the state court adjudicated the claim on the merits, then 2254(d) limits the review of the state court's decision as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d). If a claim has been adjudicated on the

merits in state court,[7] this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Parker v. Matthews</u>, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529

---

[7] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." <u>Lewis v. Horn</u>, 581 F.3d 92, 100 (3d Cir. 2009) (quoting <u>Thomas v. Horn</u>, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." <u>Pinholster</u>, 563 U.S. 170, 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." <u>Id.</u> (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011)). <u>See also</u> <u>Johnson v. Williams</u>, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted").

U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA."  <u>Parker</u>, 567 U.S. at 48-49 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" <u>Williams</u>, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.  "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law."  <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Williams</u>, 529 U.S. at

11

410).

## III. Discussion

### A. Exhaustion

Before reviewing the claims contained in the Petition, the Court must determine whether Petitioner has exhausted them in state court.  <u>See</u> 28 U.S.C. § 2254(b).  To satisfy the exhaustion requirement in § 2254(b), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  "[I]f the petitioner fails to satisfy the exhaustion requirement prior to filing a federal habeas petition and none of the exceptions apply, the federal court is precluded from granting habeas relief to the petitioner."  <u>Lambert</u>, 134 F.3d at 513-14.  The Court, however, may deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

It appears from the record that most of Plaintiff's claims are unexhausted.  Because the grounds for relief raised in the Petition may be denied on the merits without regard to

exhaustion pursuant to § 2254(b)(2), the Court will decline to engage in an exhaustion analysis as it is unnecessary to the disposition of the Petition.

**B. Ineffective Assistance of Counsel**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 685–86 (1984). A defendant who alleges ineffective assistance must satisfy the two-part test outlined in Strickland:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 686–88. A petitioner must identify the particular acts or omissions that are challenged as unprofessional. See id. at 690. Under the first prong of the Strickland test, scrutiny of counsel's conduct must be "highly deferential." See id. at 689. "Counsel is strongly presumed to have rendered adequate

13

assistance and made all significant decisions in the exercise of
reasonable professional judgment." Id. at 690.  The reviewing
court must make every effort to "eliminate the distorting
effects of hindsight, to reconstruct the circumstances of
counsel's challenged conduct, and to evaluate the conduct from
counsel's perspective at the time." Id. at 689.  If counsel
makes "a thorough investigation of law and facts" about his
plausible options, then counsel's strategic choices are
"virtually unchallengeable." Gov't of Virgin Islands v.
Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing
Strickland, 466 U.S. at 690-91).

The second prong of the Strickland test requires the
petitioner to prove prejudice.  See Strickland, 466 U.S at 693.
To demonstrate prejudice, the defendant must show that counsel's
deficient performance "actually had an adverse effect on the
defense." Id. at 693.  "The defendant must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. at 694.  "The
likelihood of a different result must be substantial, not just
conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).
Only attorney errors that affect the outcome of a criminal

proceeding will be grounds for habeas relief.  Strickland, 466
U.S. at 691.  "[A] court need not determine whether counsel's
performance was deficient before examining the prejudice
suffered by the defendant as a result of the alleged
deficiencies . . . .  If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient
prejudice . . . that course should be followed."  Id. at 697.

Petitioner first argues that his trial counsel was
ineffective for not showing the jury the jacket he was wearing
at the time of the incident "so they could see it was impossible
to see a gun in plain view sight so big and long as it was."  It
appears from the record that the state courts did not reach the
merits of this argument, and thus state court deference may not
apply to this claim.  See Appel, 250 F.3d at 210.  Because this
Court's de novo review is a more exacting standard than
deference to the state court decision, the Court finds
Petitioner's claim would fail under either standard.

Petitioner's argument fails because Petitioner cannot
demonstrate prejudice.  The testimony presented at trial
regarding the discovery of the gun is as follows:  "When
[Petitioner] placed his hands above his head, his jacket raised,
exposing his waistline, and I observed a handgun in his
waistband . . . .  [Petitioner] lifted his arms, his jacket – I

think he had a leather jacket on — he exposed it." ECF No. 14-10 at 137, 140. After Petitioner exposed the gun by raising his arms, he then uttered that he needed the gun for his protection, a statement that Officers Gorman, D'Arcangelo, and Porter all heard. See id. at 82, 142, 165. The length of the jacket would be irrelevant and immaterial in light of Petitioner's utterance to the officers and their testimony that they saw the gun in his waistband when he lifted his arms. Thus, it cannot be said that but for counsel's failure to present to the jury the jacket there is a reasonable probability that the outcome of the trial would have been different.

Next, Petitioner argues that his counsel was ineffective for failing to call a taxi cab service owner as a witness to testify that Petitioner was waiting for a taxi cab. It appears from the record that the state courts did not reach the merits of this argument, and thus state court deference may not apply to this claim. See Appel, 250 F.3d at 210. Because this Court's de novo review is a more exacting standard than deference to the state court decision, the Court finds Petitioner's claim would fail under either standard.

As to this argument, Petitioner fails to demonstrate the relevance and materiality of such testimony to his case, and further, fails to demonstrate prejudice. The statute of which

16

Petitioner was convicted at trial provides:

> A person having been convicted in this State or
> elsewhere of the crime of aggravated assault, arson,
> burglary, escape, extortion, homicide, kidnapping,
> robbery, aggravated sexual assault, sexual assault,
> bias intimidation . . ., endangering the welfare of a
> child . . ., stalking . . . or a crime involving
> domestic violence . . ., or a person having been
> convicted of a crime pursuant to the provisions of
> N.J.S.2C:35-3 through N.J.S.2C:35-6, inclusive;
> section 1 of P.L.1987, c.101 (C.2C:35-7); N.J.S.2C:35-
> 11; N.J.S.2C:39-3; N.J.S.2C:39-4; or N.J.S.2C:39-9 who
> purchases, owns, possesses or controls a firearm is
> guilty of a crime of the second degree and upon
> conviction thereof, the person shall be sentenced to a
> term of imprisonment by the court.

N.J. Stat. Ann. 2C:39-7b.  See also ECF No. 14-10 at 142 (trial

transcript; charge to jury) ("[T]he state must prove     . . .

beyond a reasonable doubt . . . that [Exhibit] S-7 is a

firearm," "that the defendant purchased, owned, possessed or

controlled the firearm on March 26, 2007 in Pleasantville, New

Jersey," and "that the defendant is a person who previously has

been convicted of a crime of the third degree.").  Whether

Petitioner was waiting for a cab is immaterial to whether

Petitioner was in possession of a weapon by a convicted person

in violation of N.J. Stat. Ann. 2C:39-7b.  The fact that this

witness would have allegedly testified that Petitioner was

waiting for a taxi cab does not account for the fact that

Petitioner was in possession of a weapon as a person convicted

of certain offenses.  Because the proposed testimony would be

immaterial to the dispositive issues in the trial, Petitioner cannot demonstrate that the outcome of the trial would have been different if the witness had testified.[8]

Petitioner's next argument is that his counsel was ineffective for failing to cross-examine Officer Gorman as to whether he smelled alcohol on Petitioner. The state PCR court did address this claim on the merits, and it reasonably applied Strickland in denying the claim. Even without state court deference, however, the claim would fail under a de novo standard.

Trial counsel cross-examined Officer Gorman at length regarding Petitioner's intoxication or impairment:

> Q    Did you ask him any questions to — to confi — to
>      confirm whether he was okay?
>
> A    Yeah, I did.
>
> Q    You did.  Did you ask whether he had been
>      drinking?
>
> A    I did not.
>
> Q    Did you ask him whether he was under the

---

[8] Whether to call a witness is a strategic decision.  See Henderson v. DiGuglielmo, 138 F. App'x 463, 469 (3d Cir. 2005) ("Counsel's failure to call a witness is precisely the sort of strategic trial decision that Strickland protects from second-guessing."); Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried.  We therefore accord counsel's strategic trial decisions great deference.")

influence of any drugs or alcohol?

A    I did not.

ECF No. 14-10 at 91-92 (trial transcript).

Q    And in your experience arresting or — or with
     people who are intoxicated, you sometimes find
     out after you think that their speech is strange
     or slurred, that they're in fact non-intoxicated,
     right?

A.   Sometimes, yeah.  I don't know what their speech
     is like on a prior occasion either though.

Q    Right, so you wouldn't really know just from the
     slurring of his speech that he was intoxicated?

A    It's an indicator.  It's not a hundred percent
     factual.

Id.

Q    Did you ever confirm whether or not he was on any
     drugs or alcohol?

A    Besides him saying that he was on Percocets,
     that's the only confirmation that I have was out
     of his mouth.

Q    Okay.  You never gave him a breathalyzer test?

A.   No.

Q    You never checked his urine?

A    No.

Q    By the way, it's — it's illegal to be under the
     influence of drugs, isn't it?

A    It's —

Q    Not legal drugs.

A    Yeah, it is.

19

Q       So, you could have taken a urine test to find out
        whether or not there were any illicit drugs in
        his system, right?

A       No.

Q       You couldn't do that?

A       No, I couldn't — I can't make —

Q       You've never done that?

A       You got to commit a crime.  You've got to be out
        behind a — you got to be behind a — a — wheel to
        do that, and even — even with that, you got to,
        you know, you got to get his permission to do
        that, but you have to be under the influence of a
        — of a whe — you know, a car or a motorcycle or
        something like that.  I just can't — I just can't
        stop someone on the — on the side of the street
        and say, you know, "I need a urine test from you
        because I think you are under the influence of
        some drug."  I — can't do that, no.

Id.

        Citing <u>Strickland</u>, the PCR court noted the strong

presumption that counsel's conduct fell within the wide range of

reasonable professional assistance and that Petitioner's counsel

was not unreasonable in questioning Officer Gorman in the manner

in which she did.  If it were faced with this issue de novo,

this Court would reach the same conclusion.  The cross-

examination of Officer Gorman was well within the prevailing

professional norms, and there is no reasonable probability that

the verdict would have been different if counsel had asked

Officer Gorman whether he smelled alcohol on Petitioner's

breath.

Petitioner's final argument is that his counsel was ineffective for failing to ask why the police dispatch report did not mention an intoxicated person. It appears from the record that the state courts did not reach the merits of this argument, and thus state court deference may not apply to this claim. See Appel, 250 F.3d at 210. Because this Court's de novo review is a more exacting standard than deference to the state court decision, the Court finds Petitioner's claim would fail under either standard.

As to this claim, Petitioner cannot demonstrate prejudice. In order to demonstrate prejudice, Petitioner must show that but for counsel's failure of performance, there is a reasonable probability that the outcome of the proceeding would be different. Given the elements of the offense charged, discussed supra, Petitioner has not and cannot demonstrate that the report's lack of reference to an "intoxicated person" would have changed the result of the trial. Whether Petitioner was intoxicated or whether the dispatch report referenced his alleged intoxication is simply irrelevant to the elements necessary to sustain a conviction. There is thus no reasonable probability that the outcome of the trial would be different but for counsel's failure to ask why the report did not reference an

"intoxicated person.".  Petitioner has failed to establish
prejudice as to this claim.

## C. Due Process

Petitioner's second ground for relief is that his right to
due process was violated when an officer "committed perjury at
my grand jury he testified he patted me down but five months
later he testified he never touched me committing perjury."  ECF
No. 1, Pet. at 8.  It appears from the record that the state
courts did not reach the merits of this argument, and thus state
court deference may not apply to this claim.  See Appel, 250
F.3d at 210.  Because this Court's de novo review is a more
exacting standard than deference to the state court decision,
the Court finds Petitioner's claim would fail under either
standard.

Due process is violated "when the State, although not
soliciting false evidence [at trial], allows it to go
uncorrected when it appears."  Napue v. Illinois, 360 U.S. 264,
269 (1959).  Perjury occurs when a witness "'gives false
testimony concerning a material matter with the willful intent
to provide false testimony, rather than as a result of
confusion, mistake, or faulty memory.'"  United States v.
Hoffecker, 530 F.3d 137, 183 (3d Cir. 2008) (quoting United
States v. Dunnigan, 507 U.S. 87, 94 (1993)).  "[I]n order to

22

make out a constitutional violation [the petitioner] must show

that (1) [the witness] committed perjury; (2) the government

knew or should have known of his perjury; (3) the testimony went

uncorrected; and (4) there is any reasonable likelihood that the

false testimony could have affected the verdict." Lambert v.

Blackwell, 387 F.3d 210, 242 (3d Cir. 2004).

A review of Officer Gorman's testimony regarding the pat

down demonstrates that he did not perjure himself, nor has a

constitutional violation of due process occurred. At the grand

jury, Officer Gorman testified that, "When I patted him down his

hands were over his head interlocked just for my safety and I'm

patting him down. Another officer screams out gun." ECF No.

14-1 at 6 (grand jury transcript). At the suppression hearing,

Officer Gorman testified that, "I didn't even pat him down."

ECF No. 14-2 at 21 (suppression hearing transcript). At trial,

however, he went on to explain the context of his prior

statements and provided a comprehensive account of how the

mechanics of the pat down occurred:

> A    So, I told him to turn around, put his hands on
>      top of his head, and interlock his fingers.
>
> Q    Did he put his arms over his head?
>
> A    He — I had to actually kind of help him do this
>      movement. He wasn't doing anything voluntarily.
>      He was — I would s — say give him 50 percent.
>      That's how I would classify it. I had to kind of

turn him, show him exactly how I want him to.  I
said, Put your hands on top of your head."  I
said that a couple of times.  He finally — he
finally did it, but he put his hands on top of
his head like this.  He wouldn't interlock — he
would not even come close to interlocking his
fingers.  I asked him again, then he went like
this.  Well, that's not interlocking your
fingers.  And then, I did it myself.

Q    You did it yourself for him?

A    I did.

Q    After you got him to interlock his fingers, did
     you ask him anything?

A    I asked him if he had anything on him that would
     hurt me.

Q    Okay.

A    Any weapons or anything on him that would hurt
     me.

Q    Any response?

A    It was, at that time, you know, no.  You know.

Q    Okay, what happens at that point?  If anything?

A    At that time, . . . I'm going to pull him back a
     little bit.  . . . [I]f someone's 6 ft., and I'm
     . . . 5'8", I have to bring him down towards me a
     little bit to position myself to be able to make
     as safe as possible in that situation to, you
     know, maneuver where I have to maneuver.  So, as
     I'm doing that, I'm getting him perfect for me to
     initiate my pat down of him.  Again, he would be
     brought back a little bit, and I'm going to reach
     around, and you start from — this is how I was
     trained, at least — you start from the head to
     the — to the feet.  All the way down to the feet.

Q    Okay.  Did you ever frisk him?

A    Did I actually — technically, a "frisk" is

starting from the fingers, because you search
someone's fingers — they could have a . . . blade
in there, they could have anything.  So, by
definition, did I — did I frisk him?  If you want
to count that.  Yeah.  I would say yes.

Q     Were you planning on frisking him more?

A     Yes.  I was going to — I was going to pat him
down for — again.  If he had a weapon or anything
that would hurt me.

ECF No. 14-10 at 79–81 (trial transcript).  Officer Gorman,

however, was unable to continue to pat down Petitioner because

Officer D'Arcangelo spotted the gun and yelled, "gun."

Here, Petitioner has failed to establish a constitutional

violation of due process.  After a comprehensive review of

Officer Gorman's testimony, the Court cannot conclude that

Officer Gorman perjured himself regarding whether he did or did

not pat down Petitioner.  Officer Gorman provided testimony at

trial to put his prior statements into context:  that the

technical start of a "pat down" occurred when Petitioner stood

with interlocked fingers and Officer Gorman started his visual

inspection, but that Officer Gorman never had an opportunity to

finish the "pat down" with a physical pat down to feel for

weapons.  It is clear from Officer Gorman's explanation at trial

that a pat down is a process with various stages to it, which

explains the alleged discrepancy in his prior testimony.  The

Court cannot discern any willful intent to provide false

testimony on the part of Officer Gorman, who tried only to explain how the events unfolded. Furthermore, Petitioner has not established the elements necessary to sustain a constitutional due process violation, and at no point in the Petition has Petitioner even attempted to explain how any discrepancy over the pat down would have affected or undermined the verdict. Notably, the testimony at trial is that Officer D'Arcangelo visualized the gun in Petitioner's waistband when he lifted his arms above his head at the start of the pat down. Whether a gun would have been discovered in the latter portions of the physical pat down or whether a full pat down occurred would appear to be irrelevant and immaterial to the elements necessary to sustain a conviction. Because Petitioner has failed to establish a violation of his due process rights, the Court will deny the second ground for relief in the Petition.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

## V.  CONCLUSION

For the above reasons, the § 2254 habeas petition will be denied, and a certificate of appealability will not issue.  An appropriate Order follows.


Dated: November 1, 2018                s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.